

## Fourth Court of Appeals
### San Antonio, Texas

**MEMORANDUM OPINION**

No. 04-20-00452-CV

**IN THE INTEREST OF A.L.H.**, S.S.H., H.R.H., H.L.H., V.A.P., and R.J.R., Children

From the 438th Judicial District Court, Bexar County, Texas
Trial Court No. 2019PA02055
Honorable Charles E. Montemayor, Judge Presiding

Opinion by:     Beth Watkins, Justice

Sitting:         Rebeca C. Martinez, Chief Justice
                 Beth Watkins, Justice
                 Liza A. Rodriguez, Justice

Delivered and Filed: March 24, 2021

AFFIRMED

Appellant M.P. appeals the trial court's order terminating her parental rights to her children, A.L.H., S.S.H., H.R.H., H.L.H., V.A.P., and R.J.R.[1] On appeal, she argues the trial court abused its discretion by denying her motion for continuance. She also argues the evidence is legally and factually insufficient to support the trial court's findings under Texas Family Code section 161.001(b)(1)(N), (O), and (P) and its finding that termination was in her children's best interests. We affirm the trial court's order.

---

[1] To protect the privacy of the minor children, we refer to the parent and the children by their initials. TEX. R. APP. P. 9.8(b)(2).

BACKGROUND

In October of 2019, the Texas Department of Family and Protective Services ("the Department") removed M.P.'s children from her care after receiving a report that she neglected the children and exposed them to domestic violence. Specifically, the report alleged that the children had been living in an unsanitary environment and they recently saw M.P. stab their uncle during a physical altercation. M.P. was subsequently arrested.

After removing the children, the Department filed a petition to terminate M.P.'s parental rights, obtained temporary managing conservatorship over the children, and placed them together at a shelter. The Department ultimately placed A.L.H., S.S.H., H.R.H., and H.L.H. with their biological father, J.H, and placed V.A.P. and R.J.R. with a foster family. The Department also created a service plan for M.P., requiring her to complete domestic violence and parenting classes, participate in a substance abuse treatment program, submit to random drug tests, obtain a psychiatric evaluation, engage in individual counseling, and continue to seek help for her mental health. Due to ongoing concerns regarding M.P.'s drug use, the Department pursued termination of her parental rights.

In August of 2020, the trial court held a one-day bench trial via Zoom. At the time of trial, A.L.H. was twelve years old, S.S.H. was ten, H.R.H. was eight, H.L.H. was seven, V.A.P. was six, and R.J.R. was four. When the trial started, M.P. requested a continuance, arguing she was struggling with drug addiction, the COVID-19 pandemic had increased her anxiety, and she needed more time to reengage in drug treatment. The trial court denied the request but reserved the right to grant a continuance if it became apparent that M.P. was making "even the slightest bit of engagement of progress." The trial court then heard testimony from several witnesses, including the Department caseworker, J.H., and M.P. At the conclusion of trial, the court signed an order terminating M.P.'s parental rights, finding that she engaged in conduct under section

161.001(b)(1)(N), (O), and (P), and that termination of her parental rights was in the children's best interests. She raises several issues on appeal.

ANALYSIS

### *Motion for Continuance*

First, M.P. argues the trial court should have granted her motion for continuance because of the COVID-19 pandemic and because she still had time to comply with her service plan within the statutory twelve-month timeframe. M.P. asserts that by denying her motion for continuance and proceeding with a bench trial via Zoom, the trial court deprived her of due process since the hearing did not allow "adequate interaction, argument, or cross-examination in a meaningful manner."

In response, the Department argues the trial court did not abuse its discretion because M.P.'s written motion for continuance was not supported by an affidavit as required by Texas Rule of Civil Procedure 251. The Department further contends the ruling was proper because the case had been pending for ten months and M.P. continued to use drugs, did not engage in services, and had not shown any signs of improvement.

### *Standard of Review*

In parental termination cases, we review the denial of a motion for continuance for an abuse of discretion. *In re R.F. III*, 423 S.W.3d 486, 490 (Tex. App.—San Antonio 2014, no pet.). We will sustain the trial court's ruling absent a finding that "the trial court acted without reference to any guiding rules and principles, such that its ruling was arbitrary or unreasonable." *Id.*

### *Applicable Law*

Texas Rule of Civil Procedure 251 provides that no continuance shall "be granted except for sufficient cause supported by affidavit, or by consent of the parties, or by operation of law." TEX. R. CIV. P. 251. When a movant fails to comply with these requirements, we must presume

the trial court did not abuse its discretion in denying the motion. *Villegas v. Carter*, 711 S.W.2d 624, 626 (Tex. 1986); *In re R.F. III*, 423 S.W.3d at 490. Additionally, the trial court may consider the entire procedural history of the case when determining whether to deny a motion for continuance. *In re J.G.*, No. 12-18-00111-CV, 2018 WL 5318008, at *2 (Tex. App.—Tyler Oct. 29, 2018, pet. denied) (mem. op.).

*Application*

Here, M.P.'s motion for continuance was not supported by an affidavit as required by Rule 251, so we must presume the trial court did not abuse its discretion when it denied the motion. *See Villegas*, 711 S.W.2d at 626; *In re R.F. III*, 423 S.W.3d at 490. Moreover, when considering the basis for M.P.'s continuance, the trial court considered the entire procedural history of the case, highlighting that it had been pending for the past ten months and preventing permanency for the children. *See In re J.G.*, 2018 WL 5318008, at *2.

M.P. argues, however, that she had been attempting to comply with the requirements of her service plan during the COVID-19 pandemic and she still had time to fulfill the requirements within the statutory twelve-month timeframe. Section 263.401(a) of the Texas Family Code "provides for what is called the 'one-year dismissal date[,]'" and requires a trial court to dismiss a termination suit brought by the Department "on the first Monday after the first anniversary of the date the court rendered a temporary order appointing the [D]epartment as temporary managing conservator." *In re Dep't of Family & Protective Servs.*, 273 S.W.3d 637, 641–42 (Tex. 2009); *see also* TEX. FAM. CODE ANN. § 263.401(a).

Here, the court acknowledged that while the case was still within its twelve-month timeframe, M.P. never engaged in services prior to the COVID-19 pandemic, and since the pandemic began, showed no signs of progress. *See In re A.R.*, No. 11-20-00152-CV, 2020 WL 7258023, at *4 (Tex. App.—Eastland Dec. 10, 2020, no pet.) (mem. op.) (reasoning no abuse of

discretion in denying continuance when appellant did not engage in services prior to COVID-19 pandemic). During the August trial, the court received testimony that since the last permanency hearing in April of 2020, M.P. completed a thirty-day inpatient drug treatment program but relapsed after her release. Accordingly, we cannot conclude that the court acted without reference to any guiding principles or made an arbitrary or unreasonable ruling. *See id.*

To the extent M.P. argues the trial court's bench trial via Zoom deprived her of due process, M.P. was required to raise this argument in the trial court to preserve it for appeal. *See In re R.J.B.*, No. 04-18-00804-CV, 2019 WL 451681, at *2 (Tex. App.—San Antonio Feb. 6, 2019, no pet.) (mem. op.) (holding due process complaint about trial court's failure to postpone trial waived because appellant asserted it for the first time on appeal). Here, M.P. did not raise this issue in the trial court, and therefore waived it. *See id.*; *see also In re Z.L.*, No. 09-20-00194-CV, 2020 WL 7251473, at *3 (Tex. App.—Beaumont Dec. 10, 2020, no pet.) (mem. op.). Moreover, the record shows M.P. appeared, participated in the trial, and testified on her own behalf. We therefore hold the trial court did not abuse its discretion in denying M.P.'s motion, and we overrule her first issue.

### Sufficiency of the Evidence

#### Standard of Review

Turning to M.P.'s sufficiency challenges, the involuntary termination of a natural parent's rights implicates fundamental constitutional rights and "divests the parent and child of all legal rights, privileges, duties, and powers normally existing between them, except for the child's right to inherit from the parent." *In re S.J.R.-Z.*, 537 S.W.3d 677, 683 (Tex. App.—San Antonio 2017, pet. denied) (internal quotation marks omitted). "As a result, appellate courts must strictly scrutinize involuntary termination proceedings in favor of the parent." *Id.* The Department had the burden to prove, by clear and convincing evidence, both that a statutory ground existed to terminate M.P.'s parental rights and that termination was in the best interests of M.P.'s children.

TEX. FAM. CODE ANN. § 161.206; *In re A.V.*, 113 S.W.3d 355, 362 (Tex. 2003). "'Clear and convincing evidence' means the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." TEX. FAM. CODE ANN. § 101.007; *In re S.J.R.-Z.*, 537 S.W.3d at 683.

When reviewing the sufficiency of the evidence supporting a trial court's order of termination, we apply well-established standards of review. *See* TEX. FAM. CODE ANN. §§ 101.007, 161.206(a); *In re J.F.C.*, 96 S.W.3d 256, 263 (Tex. 2002). To determine whether the Department presented clear and convincing evidence, a legal sufficiency review requires us to "look at all the evidence in the light most favorable to the finding to determine whether a reasonable trier of fact could have formed a firm belief or conviction that its finding was true." *In re J.F.C.*, 96 S.W.3d at 266. We "assume that the factfinder resolved disputed facts in favor of its finding if a reasonable factfinder could do so." *In re R.S.-T.*, 522 S.W.3d 92, 98 (Tex. App.—San Antonio 2017, no pet.). "A corollary to this requirement is that a court should disregard all evidence that a reasonable factfinder could have disbelieved or found to have been incredible." *In re J.F.C.*, 96 S.W.3d at 266. Nevertheless, "we may not simply disregard undisputed facts that do not support the finding; to do so would not comport with the heightened burden of proof by clear and convincing evidence." *In re S.L.M.*, 513 S.W.3d 746, 748 (Tex. App.—San Antonio 2017, no pet.). If a reasonable factfinder could "form a firm belief or conviction" that the matter that must be proven is true, then the evidence is legally sufficient. *Id.* at 747.

In contrast, in conducting a factual sufficiency review, we must review and weigh all the evidence, including the evidence that is contrary to the trial court's findings. *In re J.O.A.*, 283 S.W.3d 336, 345 (Tex. 2009). We consider whether the disputed evidence is such that a reasonable factfinder could not have resolved it in favor of the challenged finding. *In re J.F.C.*, 96 S.W.3d at 266. The evidence is factually insufficient only if "in light of the entire record, the disputed

evidence that a reasonable factfinder could not have credited in favor of the finding is so significant that a factfinder could not reasonably have formed a firm belief or conviction." *Id.*

In both legal and factual sufficiency review, the trial court, as factfinder, is the sole judge of the weight and credibility of the evidence. *In re A.F.*, No. 04-20-00216-CV, 2020 WL 6928390, at *2 (Tex. App.—San Antonio Nov. 25, 2020, no pet.) (mem. op.). We must defer to the factfinder's resolution of disputed evidentiary issues and cannot substitute our judgment for that of the factfinder. *See, e.g., In re H.R.M.*, 209 S.W.3d 105, 108 (Tex. 2006) (per curiam) (factual sufficiency); *In re J.P.B.*, 180 S.W.3d 570, 573 (Tex. 2005) (legal sufficiency).

*Statutory Termination Grounds*

M.P. challenges the legal and factual sufficiency of the evidence supporting the trial court's findings on each of the statutory predicate grounds for termination. When, as here, the trial court terminates a parent's rights on multiple predicate grounds, we may affirm on any one ground. *In re A.V.*, 113 S.W.3d at 362; *In re D.J.H.*, 381 S.W.3d 606, 611–12 (Tex. App.—San Antonio 2012, no pet.).

Under section 161.001(b)(1)(P) of the Family Code, a trial court may terminate the parent-child relationship if it finds by clear and convincing evidence that the parent has "used a controlled substance. . . in a manner that endangered the health or safety of the child, and:

(i) failed to complete a court-ordered substance abuse treatment program; or

(ii) after completion of a court-ordered substance abuse treatment program, continued to abuse a controlled substance."

TEX. FAM. CODE ANN. § 161.001(b)(1)(P).

M.P. argues the Department did not produce any evidence that her admitted drug use endangered the health or safety of her children or that she continued to abuse drugs after she completed inpatient drug treatment. We disagree.

At trial, the Department produced evidence that M.P. had exposed her children to violence and neglected them while she was using methamphetamines. Specifically, the caseworker testified that the police arrested M.P. after she stabbed her brother with a knife in front of the children, and M.P. admitted to the caseworker that she had used methamphetamines on that day. M.P. further admitted that witnessing this event was traumatic for her children and that she did not have the ability to control her anger in that situation. And while M.P. testified that she took care of her children, the trial court heard testimony from the caseworker that on the day of M.P.'s arrest, police found the children living in unsanitary living conditions. Specifically, the caseworker testified it was unclear when the children had last bathed or eaten, the children were found minimally dressed—two children were naked—and two children had extensive lice. Based on this evidence, the trial court could have reasonably formed a firm belief or conviction that M.P. used drugs in a manner that endangered the health and safety of her children. *See In re J.F.C.*, 96 S.W.3d at 266; *In re A.F.*, No. 04-14-00712-CV, 2015 WL 1523035, at *2–*3 (Tex. App.—San Antonio April 1, 2015, no pet.) (mem. op.) (holding evidence that parent used cocaine and left children unsupervised was legally and factually sufficient evidence that parent used drugs in manner that endangered safety and health of his children).

The Department also presented evidence that M.P. continued to use drugs after completing a court-ordered substance abuse treatment program. *See* Tex. Fam. Code § 161.001(b)(1)(P)(ii). Both the caseworker and M.P. testified that M.P. completed a thirty-day inpatient drug treatment program, but subsequently relapsed. M.P. completed the inpatient program on July 8 and admitted to using methamphetamines on July 20. M.P. contends that this relapse is not evidence of continued drug use, but fails to recognize that the trial court could have reasonably relied on this evidence to form a firm belief or conviction that M.P. continued to abuse a controlled substance

after completing a court-ordered substance abuse treatment program. *See In re J.F.C.*, 96 S.W.3d at 266.

After reviewing the evidence in the light most favorable to the trial court's finding, we conclude a reasonable factfinder could have formed a firm belief or conviction that M.P. used methamphetamines in a manner that endangered the health and safety of her children and continued to abuse methamphetamines even after completing a court-ordered substance abuse treatment program. *See id.* Moreover, after reviewing all the evidence—including the evidence on which M.P. relies—we conclude the evidence contrary to the trial court's finding is not so significant that a factfinder could not have formed a firm belief or conviction in favor of that finding. *See In re J.O.A.*, 283 S.W.3d at 345. We therefore hold that legally and factually sufficient evidence supports the trial court's finding under subsection (P). Having determined that the evidence is legally and factually sufficient on this point, we do not need to address M.P.'s sufficiency challenges regarding the other statutory predicate grounds for termination since we may affirm on any one ground. *See In re A.V.*, 113 S.W.3d at 362; *In re D.J.H.*, 381 S.W.3d at 611–12.

### Best Interests

#### Applicable Law

There is a strong presumption that a child's best interest is served by maintaining the relationship between a child and the natural parent, and the Department has the burden to rebut that presumption by clear and convincing evidence. *See, e.g.*, *In re R.S.-T.*, 522 S.W.3d at 97. To determine whether the Department satisfied this burden, the Texas Legislature has provided several factors[2] for courts to consider regarding a parent's willingness and ability to provide a child

---

[2] These factors include, inter alia: "(1) the child's age and physical and mental vulnerabilities; (2) the frequency and nature of out-of-home placements; (3) the magnitude, frequency, and circumstances of the harm to the child; (4) whether the child has been the victim of repeated harm after the initial report and intervention by the department; (5) whether the child is fearful of living in or returning to the child's home; (6) the results of psychiatric, psychological,

with a safe environment, and the Texas Supreme Court has provided a similar list of factors[3] to determine a child's best interest. TEX. FAM. CODE ANN. § 263.307(b); *Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976).

A best interest finding, however, does not require proof of any particular factors. *See In re G.C.D.*, No. 04-14-00769-CV, 2015 WL 1938435, at *5 (Tex. App.—San Antonio Apr. 29, 2015, no pet.) (mem. op.). Neither the statutory factors nor the *Holley* factors are exhaustive, and "[e]vidence of a single factor may be sufficient for a factfinder to form a reasonable belief or conviction that termination is in the child's best interest." *In re J.B.-F.*, No. 04-18-00181-CV, 2018 WL 3551208, at *3 (Tex. App.—San Antonio July 25, 2018, pet. denied) (mem. op.). Additionally, evidence that proves a statutory ground for termination is probative on the issue of best interest. *In re C.H.*, 89 S.W.3d 17, 28 (Tex. 2002). Finally, "[a] trier of fact may measure a parent's future conduct by his past conduct [in] determin[ing] whether termination of parental rights is in the child's best interest." *In re E.D.*, 419 S.W.3d 615, 620 (Tex. App.—San Antonio 2013, pet. denied).

---

or developmental evaluations of the child, the child's parents, other family members, or others who have access to the child's home; (7) whether there is a history of abusive or assaultive conduct by the child's family or others who have access to the child's home; (8) whether there is a history of substance abuse by the child's family or others who have access to the child's home; (9) whether the perpetrator of the harm to the child is identified; (10) the willingness and ability of the child's family to seek out, accept, and complete counseling services and to cooperate with and facilitate an appropriate agency's close supervision; (11) the willingness and ability of the child's family to effect positive environmental and personal changes within a reasonable period of time; (12) whether the child's family demonstrates adequate parenting skills [. . .]; and (13) whether an adequate social support system consisting of an extended family and friends is available to the child." TEX. FAM. CODE ANN. § 263.307(b).

[3] Those factors include: (1) the desires of the child; (2) the emotional and physical needs of the child now and in the future; (3) the emotional and physical danger to the child now and in the future; (4) the parental abilities of the individuals seeking custody; (5) the programs available to assist those individuals to promote the best interest of the child; (6) the plans for the child by these individuals or the agency seeking custody; (7) the stability of the home or proposed placement; (8) the acts or omissions of the parent that may indicate the existing parent-child relationship is not a proper one; and (9) any excuse for the acts or omissions of the parent. *Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976).

*Application*

As indicated above, the Department produced evidence that M.P. struggled with drug addiction, and her addiction adversely impacted her children. "Parental drug abuse reflects poor judgment and may be a factor to consider in determining a child's best interest." *In re J.M.T.*, 519 S.W.3d 258, 269 (Tex. App.—Houston [1st Dist.] 2017, pet. denied); *see also* TEX. FAM. CODE § 263.307(b)(8) (stating courts may consider history of substance abuse by child's family). The caseworker testified that M.P. admitted to using methamphetamines while caring for the children on the day she was arrested. M.P. also admitted that she used drugs every month since the Department's involvement in October of 2019 until July of 2020—one month before trial. The caseworker added that over the course of the Department's involvement, she scheduled eight drug tests for M.P., and M.P. missed each of them. When asked about the missed drug tests, M.P. admitted she was using drugs. The caseworker also testified that M.P. entered a thirty-day inpatient drug treatment program in June of 2020 but relapsed shortly after she was released from the program.

The trial court also heard testimony from M.P., who admitted she had a drug problem and had been using drugs since she was thirteen years old. M.P. explained that she did not consistently use drugs, and had previously relapsed, with her most recent relapse occurring that past July. Based on this testimony, the trial court could have reasonably formed a firm belief or conviction that M.P.'s inability to abstain from drug use during the pendency of the case indicated poor judgment and demonstrated her inability to adequately care for her children. *See In re J.M.T.*, 519 S.W.3d at 269 (holding father's ongoing drug use during pendency of case showed his poor judgment and lack of parenting skills).

The Department also produced evidence that M.P. neglected the children and exposed them to family violence. This court has recognized that evidence of neglect, such as unsanitary

conditions in a home, supports a trial court's best interest finding. *In re S.T.G.*, No. 04-17-00837, 2018 WL 1935488, at \*2 (Tex. App.—San Antonio April 25, 2018, no pet.) (mem. op.). We have also recognized that exposing children to family violence is relevant to a best interest determination. *In re O.N.H.*, 401 S.W.3d 681, 684–85 (Tex. App.—San Antonio 2013, no pet.). As mentioned above, when the Department removed the children from M.P.'s care, the children were living in unsanitary conditions and it was unclear the last time they had eaten or bathed. The children were dirty, not dressed appropriately, and two had extensive lice. In addition to this evidence of neglect, the Department produced evidence that M.P. assaulted a family member in front of the children and that was traumatic to the children. Specifically, the caseworker testified that A.L.H. told her that she saw her mother stab her uncle and knew that her mother was going to jail for it. Accordingly, the trial court could have reasonably formed a firm belief or conviction that by neglecting the children and exposing them to family violence, M.P. could not provide for their emotional and physical needs and would expose them to emotional and physical danger now and in the future. *See In re A.L.*, 545 S.W.3d 138, 148 (Tex. App.—El Paso 2017, no pet.) (reasoning that evidence of unsanitary home demonstrated parent's inability to meet child's needs and supports best interest finding).

The evidence also shows that M.P. failed to complete the requirements of her service plan. "A parent's performance under a service plan is also relevant to several of the *Holley* factors" as well as several of the statutory factors in a best interest determination. *In re M.L.C.*, No. 04-17-00459, 2017 WL 6597828, at \*6 (Tex. App.—San Antonio Dec. 27, 2017, pet. denied) (mem. op.); *see* TEX. FAM. CODE § 263.307(b)(10) (willingness and ability of parent to seek out, accept, and complete services); *id.* § 263.307(b)(11) (willingness and ability of parent to effect positive changes); *id.* § 263.307(b)(12) (whether parent demonstrates adequate parenting skills); *Holley*, 544 S.W.2d at 371–72. Here, the caseworker testified M.P.'s service plan required her to complete

domestic violence and parenting classes, participate in a substance abuse treatment program, submit to random drug tests, obtain a psychiatric evaluation, engage in individual counseling, and continue to seek support for her mental health. When asked whether M.P. completed her service plan, the caseworker testified, "She did not." The caseworker added, however, that M.P. completed a psychiatric evaluation and a thirty-day inpatient drug treatment program. However, after M.P. relapsed, it was recommended that M.P. stay at the facility another thirty to sixty days, but M.P. refused and checked herself out. When asked why she refused to stay longer at the facility, M.P. testified she could not stay longer because she had to complete her other service plan requirements. The record shows that M.P. started to engage in services after she checked herself out of inpatient treatment in July—one month before trial. *See In re S.R.*, No. 07-19-00164-CV, 2019 WL 4726205, at *6 (Tex. App.—Amarillo Sept. 26, 2019, no pet.) (mem. op.) (considering a parent's late attempt to start services in a best interest determination). The caseworker testified M.P. made a counseling appointment on July 21 but missed the appointment. She added, however, that M.P. did start domestic violence and parenting classes in July.

Finally, the Department produced evidence that the children were doing well in their current placements. "Evidence about placement plans and adoption are, of course, relevant to best interest." *In re C.H.*, 89 S.W.3d at 28. The caseworker testified the Department placed the four oldest children—A.L.H., S.S.H., H.R.H., and H.L.H.—with their biological father, J.H. She testified that "[t]hey're doing really well" and the Department has not had behavioral issues with any of the children. She testified J.H. was happy to be a father and could provide a safe and stable home for his four children. J.H. also testified that he would like the children placed with him because he was fully capable of raising them. With respect to V.A.P. and R.J.R., the caseworker testified they have been in a foster home since February of 2020 and are "doing really well." She elaborated that they have made a lot of improvements, and V.A.P. is performing better

academically and R.J.R. is talking more. According to the Department, the foster family plans to adopt V.A.P. and R.J.R. M.P. contends, however, this is little evidence of the children's desires, yet we must remain mindful that no one factor is controlling in a best interest determination. *In re J.M.T.*, 519 S.W.3d at 268.

After reviewing the evidence in the light most favorable to the trial court's finding, we conclude a reasonable factfinder could have formed a firm belief or conviction that termination of M.P.'s parental rights was in the best interests of her children. *In re J.F.C.*, 96 S.W.3d at 266. Moreover, after reviewing all the evidence, we conclude the evidence contrary to the trial court's finding is not so significant that a factfinder could not have formed a firm belief or conviction in favor of that finding. *In re J.O.A.*, 283 S.W.3d at 345. We therefore hold that legally and factually sufficient evidence supports the trial court's best interest finding, and we overrule M.P.'s arguments to the contrary.

## CONCLUSION

We affirm the trial court's order of termination.

Beth Watkins, Justice